## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

DAVID GEVAS (B-41175) AND MARCIA YVONNE GEVAS, )
)
)
    Plaintiffs, )
)
    v. )
)
TROY A. DUNLOP,[1] JOSE PRADO, )
TERRELL PORK, BRADLEY )
WINEINGER, MARCIN LES, WILLIAM )
BROWN, NICHOLAS BROWN, )
CHARLES BEST, MICHELLE MILLER, )
CHRISTIAN OKEZIE, WALTER )
NICHOLSON, AND LISA WEITEKAMP, )
)
    Defendants. )

Case No. 18 C 6556

Hon. John Z. Lee

### MEMORANDUM OPINION AND ORDER

In this civil rights lawsuit brought *pro se* pursuant to 42 U.S.C. § 1983, Plaintiffs David and Marcia Gevas assert that Stateville Correctional Center officers retaliated against them in various ways over the course of approximately one year, because Plaintiffs had filed a prior lawsuit challenging Stateville's policy regarding inmate marriages. Before the Court are two motions for summary judgment, the first filed by Defendants employed by the Illinois Department of Corrections ("the IDOC Defendants"), and the second filed by Defendants employed by Wexford Health Sources ("Wexford Defendants"), as well as the IDOC Defendants' motion to amend their summary judgment motion. For the reasons stated below, the IDOC Defendants' motion to amend is granted, and summary judgment is granted in favor of all Defendants.

---

[1] Defendant Troy A. Dunlap's name was mistakenly spelled "Dunlop" in Plaintiffs' original complaint, *see* ECF No. 1; however, the parties appear to agree that the correct spelling is "Dunlap," *see, e.g.*, IDOC Defs' L.R. 56.1 Statement of Material Facts ¶ 4, ECF No. 321; Def. Dunlap's Waiver of Service, ECF No. 47. As such, the Court will refer to Defendant as "Dunlap" throughout.

I.    **IDOC Defendants' Motion to Amend Their Summary Judgment Motion**

Before considering Defendants' summary judgment motions, the Court first must address the IDOC Defendants' request to amend their motion.  *See* IDOC Defs.' Mot. File Resp. Brief, *Instanter*, ECF No. 397; IDOC Defs.' Mot. Amend, ECF No. 397-1.[2]  The motion to amend seeks to correct the record as to which Defendants are pursuing summary judgment.  *Id.*

The IDOC Defendants presently named in this action are Charles Best, Nicholas Brown, William Brown, Troy Dunlap, Marcin Les, Walter Nicholson, Terrell Pork, Jose Prado, Lisa Weitekamp, and Bradley Wineinger.  *See* 4/1/19 Order, ECF No. 36 (screening Plaintiffs' Second Amended Complaint and dismissing then-Defendant Randy Pfister); 2d Am. Compl. at 1, 3, ECF No. 37.  The IDOC Defendants filed their motion for summary judgment on October 15, 2020.  *See* IDOC Defs.' Mot. Summ. J., ECF No. 320.  The motion and accompanying materials state "Defendants Walter Nicholson, Randy Pfister, Charles F. Best, William N. Brown, Nicholas Brown, Troy A. Dunlap, Jose M. Prado and Bradley Wineinger" move for summary judgment.  *See* IDOC Defs.' Mot. Summ. J.; See IDOC Defs.' L.R. 56.1 Statement of Facts ("IDOC SOF"), ECF No. 321; IDOC Defs.' Mem. Supp. Mot. Summ. J ("IDOC Defs.' Mem. Supp. MSJ"), ECF No. 322.  Thus, the brief omits Defendants Pork, Les, and Weitekamp, and adds former Stateville Warden Randy Pfister, whom the Court dismissed from this lawsuit more than two years ago.  *See* 4/1/19 Order.

On February 23, 2021, the IDOC Defendants filed their reply in support of summary judgment, which indicated that all the IDOC Defendants seek summary judgment.  *See* IDOC

---

[2]    Technically, the IDOC Defendants' submission is a motion to file *instanter* a motion to amend their summary judgment motion. This is needlessly confusing, so the Court will refer to the motion simply as the IDOC Defendants' motion to amend their motion for summary judgment and considers the issues presented in the nested motions as a whole.

Defs.' Reply Supp. Summ. J., ECF No. 391. The Court pointed out the discrepancy and directed Defendants to submit a written statement clarifying which Defendants were moving for summary judgment by no later than April 12, 2021. *See* 4/5/21 Order, ECF No. 396. Defendants did not submit a clarifying statement by that date.

The IDOC Defendants instead filed the present motion to amend on May 21, 2021. IDOC Defs.' Mot. File Resp. Brief, *Instanter*. Defendants argue that the Court should consider the belated motion because the circumstances that led to Defendants' delayed filing constitute excusable neglect. *See* Fed. R. Civ. P. 6(b)(1)(B) (providing that a court "may, for good cause," grant an extension of a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect"). "To find 'excusable neglect,' courts should consider all relevant circumstances surrounding the party's neglect, including the prejudice to the non-movant, length of delay, and reason for delay." *Bowman v. Korte*, 962 F.3d 995, 998 (7th Cir. 2020).

Defendants explain that their late response was due to technical difficulties affecting the entire Illinois Attorney General's Office ("OAG"). *Id.* at 2. On April 10, 2021, the OAG was the target of a ransomware attack that compromised the OAG's network. *Id.* As of the date of Defendants' motion to amend, the OAG still had not regained control of their internal network. *Id.* Defendants explain that the network issues prevented employees from accessing email, electronic case files, and the court calendar where defense counsel kept filing deadlines and appearance dates. *Id.* Without access to the calendar, defense counsel states, he inadvertently allowed the April 12, 2021, deadline to pass and, because of the time required to take stock of defense counsel's pending cases, did not realize the error until late May. *Id.*

Defendants further explain that Defendants Les, Pork, and Weitekamp were omitted from the summary judgment motion by mistake. *See* IDOC Defs.' Mot. Amend at 2. Present defense

counsel Jonathan Kangwa confirmed with prior defense counsel Nicholas Alfonso, who drafted the summary judgment motion, that the motion should have been filed on behalf of all IDOC Defendants. *Id.* at 3. Defendants argue that permitting them to correct the error would not prejudice Plaintiffs because the arguments presented in the original summary judgment motion already applied to all IDOC Defendants, while denying their request would result in great prejudice to Defendants Les, Pork, and Weitekamp, because they would be prevented from pursuing summary judgment. *Id.* at 4.

Plaintiffs oppose Defendants' motion to amend, arguing that defense counsel should have reviewed and corrected the summary judgment materials earlier. *See* Pls.' Resp. Opp'n Defs.' Mot. File and Mot. Amend, ECF No. 398 at 2–3. However, given the technical problems that crippled the OAG for weeks, the Court finds that defense counsel's delay in filing the motion to amend is excusable. Upon realizing that the April 12, 2021, deadline had passed, counsel promptly attempted to comply with the Court's directives. Therefore, the Court accepts Defendants' motion to amend despite the elapsed deadline.

The Court also finds that neither the parties' interests nor the interests of judicial economy would be served by treating the IDOC Defendants' motion for summary judgment as filed on behalf of only a subset of the Defendants. Certainly, defense counsel should have exercised more care when drafting the motion for summary judgment. The omission, however, was unintentional. And, although Plaintiffs argue to the contrary, *see* Pls.' Resp. Opp'n Defs.' Mot. File and Mot. Amend at 2–3, there is no reason to believe that listing the incorrect set of Defendants was anything other than a mistake.

Moreover, the IDOC Defendants' arguments and statements of fact generally apply to all Defendants collectively, and this is how Plaintiffs responded to those arguments and facts.

4

Although Plaintiffs call attention to the omitted Defendants in their response to the IDOC Defendants' Rule 56.1 statement, *see* Pls.' Resp. Opp'n IDOC SOF ¶ 4, ECF No. 366, the remainder of Plaintiffs' response to the summary judgment motion treats it as though it were filed on behalf of all IDOC Defendants, *see* Pls.' Mem. Opp'n IDOC MSJ, ECF No. 368. Plaintiffs specifically include arguments and exhibits pertaining to Defendants Les, Pork, and Weitekamp in their briefing. *See* Pl.'s Resp. IDOC MSJ. Consequently, the Court finds that Plaintiffs would not be prejudiced by allowing Defendants to correct their submission.

Lastly, excluding the claims against Les, Pork, and Weitekamp from consideration would only waste the resources of the parties and the Court given that the claims against them are essentially identical to the claims against other Defendants who were originally identified in the summary judgment motion, and, as discussed below, the claims can be decided on the same grounds. Accordingly, the Court grants Defendants' motion to amend and construes their motion for summary judgment as doing so on behalf of all presently named IDOC Defendants. *See Marion v. City of Corydon, Ind.*, No. 4:07CV0003-DFH-WGH, 2008 WL 763211, at *10 n.10 (S.D. Ind. Mar. 20, 2008) (*sua sponte* construing a motion for summary judgment filed by individual county officers as seeking summary judgment on behalf of the county, as well, where the plaintiff addressed the motion as if it were filed on behalf of the county and the basis for ruling on each claim was the same).

## II. <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(a), a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is not demonstrated by the mere existence of

"some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). A fact is material if it might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 508 (7th Cir. 1992).

The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carrol v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). The non-movant must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Hannemann v. Southern Door Cty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Thus, "summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1032 (7th Cir. 2019) (cleaned up).

When deciding a motion for summary judgment, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

### III. <u>Northern District of Illinois Local Rule 56.1</u>

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court.  The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up).  Local Rule 56.1(a) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial.  N.D. Ill. L.R. 56.1(a).

The opposing party must then "file a response to each numbered paragraph in the moving party's statement" of fact.  *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (cleaned up); N.D. Ill. L.R. 56.1(b)(2), (e).  In the case of any disagreement, the opposing party must reference "specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact."  N.D. Ill. L.R. 56.1(e)(3).  "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material."  *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).  "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."  *Id*.  The nonmoving party may also present a separate statement of additional facts that require the denial of summary judgment that consists of "concise numbered paragraphs" "supported by citation to the specific evidentiary material, including the specific page number, that supports it."  N.D. Ill. L.R. 56.1(b)(3), (d)(1)–(2).

In this case, the IDOC and Wexford Defendants filed Rule 56.1 statements of material facts with their motions for summary judgment.  *See* IDOC SOF; Wexford Defs.' L.R. 56.1 Statement of Facts ("Wexford SOF"), ECF No. 327.  Consistent with the local rules, Defendants also

provided Plaintiffs with Local Rule 56.2 Notices, which explain what Local Rule 56.1 requires of a litigant opposing summary judgment. ECF Nos. 326, 352.

Plaintiffs, for their part, responded to Defendants' statements of uncontested material facts, ECF Nos. 364, 366, and submitted exhibits in support of their responses. Pls.' Resp. Opp'n Wexford SOF, ECF No. 364; Pls.' Resp. Opp'n IDOC SOF; Pls.' L.R. 56.1 Exs. ("Pls.' Exs."), ECF No. 367;[3] Pls.' Ex. E, ECF No. 377, Pls.' Ex. M, ECF No. 379. Plaintiffs also submitted "memorand[a] of law" in opposition to Defendants' motions. Pls.' Mem. Opp'n Wexford MSJ, ECF No. 365; Pls.' Mem. Opp'n IDOC MSJ.

Even generously construed, however, Plaintiffs' submissions cannot be deemed an appropriate response to Defendants' statements of material facts. First, Plaintiffs, did not submit separate statements of additional facts in accordance with Local Rule 56.1(b)(3).[4] Although Plaintiffs' memoranda of law present a long description of facts with citations to exhibits Plaintiffs contend support those facts (in addition to Plaintiffs' legal arguments), combining what are essentially statements of additional facts into the legal memoranda does not comport with Local Rule 56.1's clear requirements. And, more to the point, doing so deprives Defendants of a meaningful opportunity to respond to the additional facts as contemplated by that rule.

Second, although Plaintiffs filed a separate response to Defendants' statements of facts,

---

[3] Three copies of Plaintiffs' compiled summary judgment exhibits appear on the docket: ECF Nos. 360, 363, and 367. All three copies are identical, except that two of the copies—ECF Nos. 360 and 363—mistakenly include copies of some of Plaintiffs' other summary judgment materials. The Court, therefore, will cite to the documents docketed at ECF No. 367, which does not include extraneous material, when referring to Plaintiff's exhibits.

[4] The Court notes that Plaintiff David Gevas, at least, is familiar with Local Rule 56.1's requirement that additional facts be set out in a separate statement because he filed a statement of additional undisputed facts in another of his lawsuits not long before submitting his summary judgment response in this case. *See* Pl.'s Undisputed Additional Material Facts, *Gevas v. DeTella*, No. 1:18-cv-2736 (N.D. Ill.) (Lee, J.), ECF No. 165.

many of the responses are defective. The responses are in large part argumentative,[5] nonresponsive[6] or evasive,[7] not supported by citations to the record,[8] or simply inexplicable.[9] Many of the responses also contain legal conclusions[10] and additional proposed facts,[11] or raise complaints about discovery disputes.[12] Such responses are improper. N.D. Ill. L.R. 56.1(e)(2) ("A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made. A response may not assert legal arguments except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support."); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643–44 (7th Cir. 2008) (holding

---

[5]      *See, e.g.*, Pls.' Resp. Opp'n Wexford SOF ¶¶ 18, 20–23, 28, 32; Pls.' Resp. Opp'n IDOC SOF ¶ 10, 11, 13, 15.

[6]      *See, e.g.*, Pls.' Resp. Opp'n Wexford SOF ¶ 30.

[7]      For example, paragraph 14 of IDOC Defendants' statement of undisputed fact states: "Plaintiff never heard (or overheard) Defendant Dunlap state that he was against marriages at Stateville. The same is true for Defendant Prado." IDOC SOF ¶ 14. In response, Plaintiffs accuse Defendants of attempting a "play on words with 'heard' and 'state.'" Plaintiffs support this accusation by citing to the dictionary definitions of the noun "state—as in "a condition of being"—and the verb "to state"—as in "to express in words." *See* Pls.' Resp. Opp'n IDOC SOF ¶¶ 14, 17 (citing *State*, Webster's New World College Dictionary (3d Ed. 1996)); *see also State*, Merriam-Webster, https://www.merriam-webster.com/dictionary/state (last visited Aug. 16, 2021). Even though it is clear Defendants' statement of facts uses "state" in the latter sense, Plaintiffs attempt to avoid answering directly by instead suggesting Defendants Dunlap and Prado were in "a state of retaliation." Pls.' Resp. Opp'n IDOC SOF ¶ 14. This sort of gamesmanship does not satisfy their obligation under the local rule.

[8]      *See, e.g.,* Pls.' Resp. Opp'n Wexford SOF ¶ 11; Pls.' Resp. Opp'n IDOC SOF ¶ 15, 16.

[9]      For example, Plaintiffs deny several statements of fact because they contend "Defendants do not properly support their statement of material fact." *See, e.g.*, Pls.' Resp. Opp'n IDOC SOF ¶¶ 9, 13. Plaintiffs, however, seem to misinterpret Defendants' citations to David Gevas' January 29, 2020 deposition. Where Defendants cite to a range of pages or lines—thusly: Exhibit A, 37:22–38:12—Plaintiffs appear to be interpreting the citation to refer only to the first and last lines of the range noted in the citation— in other words, only lines 37:22 and 38:12. *Id.* The Court sees no ambiguity in Defendants' citation method; it is unclear why Plaintiffs read the citations in this manner.

[10]      *See, e.g.*, Pls.' Resp. Opp'n Wexford SOF ¶¶ 17, 21; Pls.' Resp. Opp'n IDOC SOF ¶¶ 15, 16.

[11]      *See, e.g.*, Pls.' Resp. Opp'n Wexford SOF ¶¶ 14, 21, 25, 28.

[12]      *See, e.g.*, Pls.' Resp. Opp'n IDOC SOF ¶¶ 12, 16.

that the district court did not abuse its discretion when it "refused to consider the facts proposed in [plaintiff's] Rule 56.1 response after concluding that he did not separate his proposed facts from his responses to [defendant's] proposed material facts").

Although courts construe *pro se* pleadings liberally, *see Thomas v. Williams*, 822 F.3d 378, 385 (7th Cir. 2016), a plaintiff's *pro se* status does not excuse him or her from complying with federal and local procedural rules. *Gray v. Hardy*, 826 F.3d 1000, 1004 (7th Cir. 2016) (noting that district courts are entitled to insist on strict compliance with local rules even where a litigant is *pro se*); *Hatter v. Williams*, 844 F. App'x 870, 872 (7th Cir. 2021) ("Although [plaintiff] was *pro se*, the district court strictly enforced its rules as it is entitled to do."); *see also McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Collins v. Illinois*, 554 F.3d 693, 697 (7th Cir. 2009) ("[E]ven *pro se* litigants must follow procedural rules.").

Local Rule 56.1 "provides the only acceptable means of disputing the other party's facts and of presenting additional facts to the district court. [Plaintiffs] chose not to employ these means, instead presenting the facts in a way [they] believed adequate. However, . . . it is not the parties' prerogative to determine when a rule can be satisfied by other than what the rule requires." *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995); *see also Cichon v. Exelon Generation Co.*, 401 F.3d 803, 809–10 (7th Cir. 2005) ("Because [plaintiff] failed to comply with Rule 56.1 which requires that a litigant file a separate statement of additional facts, we hold that it was not an abuse of discretion for the district court to ignore most of [the plaintiff's] proposed 'facts' when ruling on [defendant's] motion for summary judgment.");

Therefore, insofar as Plaintiffs' memoranda include statements of additional facts not

encompassed within the parties' Rule 56.1 statements, the Court has not considered those facts. The Court also considers Plaintiffs' responses to Defendants' statements of facts only to the extent they are responsive and supported by the record or where Plaintiffs could properly testify about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013). Where statements of fact are properly supported by the cited materials and are not otherwise disputed by the evidence raised by the opposing parties, the Court considers those statements as undisputed. Fed. R. Civ. P. 56(e)(2). With these guidelines in mind, the Court turns to the facts of this case, stating those facts as favorably to Plaintiffs as the record and Local Rule 56.1 permit.

## IV.    Background

### A.    Undisputed Facts

Plaintiff David Gevas is an Illinois resident, who is currently incarcerated at Dixon Correctional Center. IDOC SOF, Ex. A, D. Gevas Dep. at 16:9–14, ECF No 321-1. He was incarcerated at Stateville Correctional Center ("Stateville") from approximately 2010 to April 2019. *Id.* at 17:23–18:8. On October 30, 2017, David Gevas married Plaintiff Marcia Gevas, then Marcia Bryja, in a civil ceremony conducted at Stateville. *See* IDOC SOF ¶¶ 3, 8; 12/29/17 Order at 1, *Gevas v. Hardy*, No. 1:17-cv-6891 ("*Gevas v. Hardy*") (N.D. Ill.) (Shah, J.), ECF No. 42 (noting the date of Plaintiffs' marriage). Marcia Gevas presently resides in Riverside, Illinois. *See* IDOC SOF ¶ 3; Wexford SOF ¶ 5; 2d Am. Compl. at 2.

Prior to their marriage, Plaintiffs filed *Gevas v. Hardy*, which alleged that Plaintiffs' right to marry was unconstitutionally burdened by the criteria used for approving marriage requests. *See* Compl., *Hardy*, 1:17-cv-6891 ("*Hardy* Compl."), ECF No. 1.[13] Illinois law generally requires

---

[13]    While the parties do not disagree on the procedural history or rulings in *Gevas v. Hardy*, the Court also notes that it "may take judicial notice of public court documents." *See Entm't USA, Inc. v. Cellular Connection, LLC*, No. 1:18-CV-317-HAB, 2019 WL 2138676, at *3 (N.D. Ind. May 16, 2019) (citing *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)); *In re KJK Constr. Co., Inc.*, 414 B.R. 416,

individuals seeking a marriage license to appear in person before the county clerk. *See* 2/25/19 Order at 3, *Hardy*, 1:17-cv-6891 ("*Hardy* Summary Judgment Order"), ECF No. 128; 750 Ill. Comp. Stat. 5/203. Due to concerns about potential escape attempts by inmates transported offsite, former Warden Hardy instituted a policy requiring inmates seeking to be married to be classified as a low escape risk, which then-Warden Pfister later adopted. *See Hardy* Summary Judgment Order at 3.

In August 2017, Plaintiffs requested permission from Stateville officials to be married, but because David Gevas was classified as a medium escape risk at that time, Chaplain Adamson denied the request. *Id.* In mid-September 2017, however, Marcia Gevas was able to apply for a marriage license at the Will County Clerk's office without requiring David to be present using a comprehensive power of attorney. *Id.* After Marcia obtained the license, Pfister and Adamson approved Plaintiffs' marriage request on October 20, 2017, and Plaintiffs' marriage ceremony took place at Stateville on October 30, 2017. *Id.* at 4.

Plaintiffs filed their lawsuit on September 25, 2017, after they had obtained a marriage license, but before their second marriage request had been approved. *Id.* at 3–4. They sued former Warden Hardy, then-Warden Pfister, and Chaplain Adamson. *See Hardy* Compl. at 1. None of those parties are presently defendants in the instant case, and no parties who are defendants in this case were parties in *Gevas v. Hardy*. On February 25, 2019, summary judgment in *Gevas v. Hardy* was granted for Defendants, because the judge concluded the Stateville policy, at most, resulted in an incidental interference with the timing of Plaintiffs' marriage, and the policy imposed a reasonable restriction based on security classifications. *Hardy* Summary Judgment Order at 5–6.

---

430 (Bankr. N.D. Ill. 2009) (taking judicial notice of other courts' filings when considering a motion for summary judgment).

This lawsuit followed. Plaintiffs allege the Defendants named in this lawsuit retaliated against them for filing the *Gevas v. Hardy* case.

## B.     Alleged Retaliatory Acts

Despite the fact that Plaintiffs did not submit a statement of additional material facts in compliance with Local Rule 56.1(b)(3) and 56.1(d), as background for the Court's analysis below, the Court briefly outlines the series of events which Plaintiffs allege occurred because Defendants were retaliating against them for filing the 2017 lawsuit.

### 1.     IDOC Defendants

With respect to the IDOC Defendants, Plaintiffs allege that on October 30, 2017, the date of their marriage ceremony, Defendant Dunlap informed them that David Gevas would be unable to retain his wedding ring following the ceremony. 2d Am. Compl. at 4. Plaintiffs include with their summary judgment materials a memorandum issued by Assistant Warden of Programs Darwin Williams, dated October 27, 2017, advising the visitor center that David Gevas would have a "side room visit" with Marcia and a Reverend Jerry Steenken. Pls.' Exs. at 4. The memo states the visitors are "[a]llowed to bring 2 Wedding bands, 1 Bible, 1 index card with vows, and 1 flower into the facility. Flower must be single flower, able to be properly searched and leave with visitor. (NO Bouquet.)" *Id.* David Gevas stated at his January 29, 2020, deposition that he believed this memo permitted him to keep the ring. D. Gevas Dep. at 57:19-58:12, 65:17-22. But Dunlap threatened to confiscate the ring and either lose or steal it if David kept the ring. 2d Am. Compl. at 4. Plaintiffs also allege that Defendant Prado cut Plaintiffs' visiting time following the marriage ceremony short by about half an hour. *Id.* at 4–5.

After their marriage, Plaintiffs assert, several Defendants interfered with Plaintiffs' visiting time. Specifically, as described below, Plaintiffs claim several Defendants delayed their visits by

not informing David Gevas that he had a visitor, not releasing him from his cell in a timely manner, harassing Marcia Gevas, and interfering with the time they spent together during the visits.

According to Plaintiffs, on February 15, 2018, Defendant Les told David Gevas he had a visitor, but did not release him for more than an hour. *Id.* at 6–7.[14] On August 30, 2018, Defendants Pork and William Brown did not tell David Gevas that he had a visitor for approximately forty minutes. *Id.* at 12–13. And on other unspecified occasions after October 30, 2017, Plaintiffs contend that Pork delayed in informing David Gevas that he had visitor for approximately forty to sixty minutes. *Id.* at 13.

Furthermore, Plaintiffs state that on April 23, 2018, Prado yelled at Marcia that her visit with David had been too long. *Id* at 11.[15] On May 2, 2018, Marcia was stopped by an Officer Rios, who informed Marcia that an unidentified correctional officer had called Rios and said Marcia's shirt was transparent in violating of Stateville's dress code. *Id.* at 8. Rios, however, concluded that this was incorrect. *Id.* On July 27, 2018, Defendant Nicholas Brown stopped Marcia on her way to see David and said her skirt was too short, pointing at her legs. *Id.* at 11. And on September 16, 2018, unidentified officers made Marcia Gevas wait for an hour before searching her prior to a visit with David. *Id.* at 13.

Plaintiffs also allege that on unspecified occasions, Defendant Wineinger attempted to cut Plaintiffs' visits short by half an hour. *Id.* at 5–6. And on August 27, 2018, and other unspecified occasions, Defendant Prado made Plaintiffs sit at "table zero" during their visits. *Id.* at 12. David

---

[14]    Plaintiffs claim that Les believed David's visitor was his wife, but in fact it was his attorney. 2d Am. Compl. at 6–7.

[15]    Plaintiffs allege this was done both as retaliation for challenging Stateville's marriage policy and because David had filed a grievance after Prado cut short the post-marriage ceremony visit. 2d Am. Compl. at 7.

Gevas testified at his deposition that table zero is situated close to where Prado sits, which made Plaintiffs feel intimidated during their visits.  D. Gevas Dep. at 153:3–155:16.  Plaintiffs also allege that Defendant Nicholson failed to preserve the video recording from the visiting room from August 27, 2018, one of the occasions when Prado was intimidating them.  2d Am. Compl. at 12.

Finally, Plaintiffs complain about Defendants' treatment of David Gevas.  On January 16, 2018, Plaintiffs allege, Defendant Wineinger left David Gevas in a bullpen for over five hours, so preventing him from undergoing a breathing treatment.  *Id.* at 5.  Moreover, during the time he spent in the bullpen, Wineinger allegedly taunted David and suggested that his food had been tainted.  *Id.*  Wineinger and Pork then teamed up to create a disciplinary report falsely accusing David of making inappropriate comments against Pork while in the bullpen on January 16, 2018.  *Id.*  On January 23, 2018, Defendant Best held a hearing on that disciplinary ticket.  *Id.* at 6.  At the hearing, Plaintiffs allege that Best did not call any witnesses on David's behalf.  *Id.*  Best also permitted Pork and William Brown to be present at the hearing, which ensured that David Gevas would be found guilty of the charges.  *Id.*  The effect of the guilty finding was that David's visiting privileges were taken away.  *Id.* at 5.

On April 30, 2018, according to Plaintiffs, Prado shook down David Gevas twice prior to his deposition in the *Gevas v. Hardy* case, when only one shakedown was necessary.  *Id.* at 8.  In Plaintiffs' view, Prado's additional search was intended to cause David unnecessary pain because he was wearing a sling on his arm following a surgical procedure.  *Id.*

Plaintiffs next allege that Pork and William Brown conducted a search of David Gevas's cell on May 2, 2018, and "ransacked" and threw out his property, but not that of his cellmate.  *Id.* at 9.  Plaintiffs allege that Pork and Brown later created a shakedown slip falsely stating that the search was random and that nothing had been found or taken during the search.  *Id.*  Reassembling

15

his property caused David pain because he had recently undergone surgery. *Id.* And Plaintiffs allege Nicholson and Weitekamp failed to preserve video recordings of the May 2, 2018, shakedown of David Gevas' cell. *Id.* at 10.

According to Plaintiffs, Pork and William Brown also searched David Gevas's cell on July 26, 2018, and removed plastic covering the cell window, letting cold air, wind, and rain into the cell. *Id.* Pork and William Brown allegedly also prevented David Gevas from going to his dentist appointment on August 7, 2018. *Id.* at 12.

Lastly, Plaintiffs allege that Nicholson, who was the Warden of Stateville at the time this lawsuit was filed, "turned a blind eye and refused to stop the campaign of retaliation" described above "when made aware." *Id.* at 10. David Gevas testified at his deposition that he and Marcia talked to Nicholson about the allegedly retaliatory actions in person and through letters. D. Gevas Dep. at 141:4–8.

The IDOC Defendants do not specifically address each of these incidents in their summary judgment materials, but instead argue that Defendants were unaware of Plaintiffs' 2017 lawsuit and had no antipathy toward Plaintiffs' marriage. *See* IDOC Defs.' Mem. Supp. MSJ at 4–5; IDOC SOF ¶ 17. The IDOC Defendants also note, and the parties do not dispute, that Plaintiffs continued filing lawsuits and grievances following the above events. IDOC SOF ¶¶ 19–20.

### 2. Wexford Defendants

With respect to the Wexford Defendants, Plaintiffs allege that on May 4, 2018, Defendants Miller and Okezie discontinued David Gevas's medical "lay-in" permit at Defendant William Brown's behest. 2d Am. Compl. at 9. David had been issued the permit on April 17, 2018, following surgery. D. Gevas Dep. at 176:5–13. The permit allowed him to receive meal trays in his cell for a six-month period because his surgery prevented him from finishing his meals in the

16

time allowed for inmates in the common cafeteria. *Id.* at 177:3–17.

On May 4, 2018, the permit was discontinued. Pls.' Exs. at 283. A May 4, 2018, notation labeled "RN note" found in David Gevas's Stateville medical records indicates the author of the note "received telephone call asking if [inmate] may go to yard if possessing lay-in permit. Lt. advised that going to yard will void lay-in. Lt. informed HCU that [inmate] went to yard. MD notified. Lay-in discontinued." Pls.' Exs. at 282. The record does not indicate the author of the note. *Id.*

Plaintiffs, however, believe the telephone call came from Defendant William Brown. 2d Am. Compl. at 9. David Gevas testified at his deposition that Brown told him he believed David should be housed in hospital if he required a lay-in permit for six months and that the permit had been discontinued and Brown "had it done." D. Gevas Dep. at 137:8-17; Wexford SOF ¶ 14. David Gevas also testified at his deposition that Defendant Miller told him she and Brown were friends and that the permit was discontinued because Brown wanted it discontinued. D. Gevas Dep. at 168:14–169:9; Wexford SOF ¶ 16.

Like the IDOC Defendants, Defendants Miller and Okezie assert that they had no knowledge of Plaintiffs' 2017 lawsuit or marriage at the time David Gevas's medical permit was discontinued. Wexford SOF ¶¶ 21, 24, 27, 31.

17

## V.    Analysis

### A.    Plaintiffs' Claim

First, the Court clarifies the scope of the claim that Plaintiffs are pursuing. After Plaintiffs filed their second amended complaint, the Court screened it pursuant to 28 U.S.C. § 1915A and permitted Plaintiffs to proceed against the Defendants listed above but dismissed the complaint as to then-Warden Pfister. *See* 4/1/19 Order at 4. In that complaint, Plaintiffs asserted a First Amendment retaliation claim against each Defendant. 4/1/19 Order at 2 ("Plaintiffs' Second Amended Complaint names thirteen Stateville and Illinois Department of Corrections Defendants and asserts that all Defendants have been and are retaliating against Plaintiffs for previously filing suit to obtain permission to marry."); 2d Am. Compl. at 4 ("The Defendants condoned and facilitated through their agents, correctional officers, started [sic] a campaign of retaliation"); *id.* at 4–13 (starting each factual allegation with "[o]ut of the campaign of retaliation"); 11/13/18 Order at 3, ECF No. 6 (screening first amended complaint and discussing the standard for First Amendment retaliation).

In addition to these retaliation claims, Plaintiffs now attempt to add several claims in their summary judgment responses. In their response to the IDOC Defendants' summary judgment motion, Plaintiffs argue that William Brown, Prado, Pork, and Wineinger were deliberately indifferent to David Gevas' medical needs because Defendants' allegedly retaliatory actions prevented David from receiving adequate medical treatment. Pls.' Mem. Opp'n IDOC MSJ at 11–12. Okezie and Miller also address in their motion for summary judgment whether Plaintiffs may make out a claim of deliberate indifference against them, and Plaintiffs respond by asserting a deliberate indifference claim in their response to the Wexford Defendants' summary judgment motion. *See* Wexford Defs.' Mot. Summ. J. at 2–4, ECF No. 325; Pls.' Mem. Opp'n Wexford

MSJ at 13.

Plaintiffs may not assert these claims at this late stage of the case. Plaintiffs' second amended complaint unambiguously stated only a retaliation claim based on their 2017 lawsuit challenging Stateville's marriage policy and, when screening that pleading, the Court only permitted Plaintiffs to proceed with that claim. *See* 4/1/19 Order at 2; 2d Am. Compl. at 4. "A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996). Therefore, the Court considers only the claim that Defendants retaliated against Plaintiffs for filing their 2017 lawsuit.

Actions taken in retaliation because an individual filed a lawsuit or grievance violate the individual's First Amendment rights. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2002). To state a claim for retaliation for exercising one's First Amendment right, a plaintiff must demonstrate that: "(1) his speech was constitutionally protected, (2) he has suffered a deprivation likely to deter free speech, and (3) his speech was at least a motivating factor" behind the retaliatory actions. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). The "basic elements" of a First Amendment retaliation claim "are the same whether the plaintiff is a prisoner, a public employee, or any other person alleging that a government official targeted protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020).

The IDOC and Wexford Defendants move for summary judgment on two grounds. First, the IDOC Defendants argue that Plaintiffs have failed to establish that they suffered a deprivation likely to deter future First Amendment activity. IDOC Defs.' Mem. Supp. MSJ at 3. Second, both IDOC and Wexford Defendants argue that no jury could conclude based on the undisputed facts that constitutionally protected activity was a motivating factor for Defendants' allegedly retaliatory

actions.  IDOC Defs.' Mem. Supp. MSJ at 3; Wexford Defs.' Mem. Supp. Mot. Summ. J. at 5–7, ECF No. 328.  The Court concludes summary judgment is warranted because the undisputed facts do not demonstrate Defendants' actions were motivated by Plaintiffs' constitutionally protected activity.

**B.  Activity Protected by the First Amendment**

Whether Plaintiffs' 2017 lawsuit and the grievance regarding Prado's actions following their marriage ceremony constitute activity protected by the First Amendment is beyond dispute. It is well established that lawsuits and prison grievances satisfy the first element of a First Amendment retaliation claim.  *See 145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (lawsuits); *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) (grievances).

**C.  Deprivation Likely to Deter Free Speech**

The IDOC Defendants argue no jury could conclude that Defendants' actions deterred Plaintiffs from future First Amendment activity, because Plaintiffs have pursued numerous grievances and lawsuits following the events described in the second amended complaint.  IDOC Defs.' Mem. Supp. MSJ at 3–4.  Plaintiffs respond that the question of whether a retaliatory action is likely to deter future speech is an objective one, so it is of no consequence that Plaintiffs continued filing lawsuits and grievances.  Pls.' Mem. Opp'n IDOC MSJ at 3–4.

It is true that the events in the amended complaint do not appear to have inhibited Plaintiffs (particularly David Gevas) from filing subsequent lawsuits and grievances.  But, as Plaintiffs correctly note, the "retaliatory action need not *actually* deter the plaintiff from persisting with First Amendment activity; an objective test determines whether retaliatory actions would deter a person of 'ordinary firmness' from engaging in the protected activity."  *McKinley v. Shoenbeck*, 731 F. App'x 511, 515 (7th Cir. 2018) (citing *Surita v. Hyde*, 655 F.3d 860, 878–79 (7th Cir. 2011)); *see*

*also Beatty v. Henshaw*, 826 F. App'x 561, 564 (7th Cir. 2020) ("[B]ecause the test is objective, it does not matter for purposes of the First Amendment claim whether the threats deterred [the plaintiff's] speech."). Thus, the IDOC Defendants fail to demonstrate that they are entitled to summary judgment based solely on the fact that Plaintiffs continued filing lawsuits and grievances following Defendants' actions.

Whether each of the allegedly retaliatory events is sufficiently severe to deter a reasonable person from future First Amendment activity may be a closer question, but the IDOC Defendants offer no facts or arguments on this point. The Court, therefore, does not consider whether the incidents described above constitute deprivations likely to deter free speech. *See Mathis v. N.Y. Life Ins. Co.*, 133 F.3d 546, 548 (7th Cir. 1998) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority forfeits the point. We will not do his research for him." (cleaned up)).

## D.     Protected Speech as a Motivating Factor

Next, the IDOC and Wexford Defendants argue that Plaintiffs fail to carry their burden of demonstrating that Defendants' actions were motivated by Plaintiffs' First Amendment activity. Plaintiffs respond that their testimony and the suspicious timing of Defendants' actions creates "a chronology of events from which retaliation may[] plausibl[y] be inferred." Pls.' Mem. Opp'n IDOC MSJ at 4 (quoting *Cain v. Lane*, 857 F.2d 1139, 1143, n.6 (7th Cir. 1988)).

To demonstrate that a defendant's acts constitute retaliation, a plaintiff bears the burden of showing "that his [or her] speech was a 'motivating factor'" for the adverse action. *Hasan v. U.S. Dep't of Lab.*, 400 F.3d 1001, 1005 (7th Cir. 2005) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Only once the plaintiff "leaps that hurdle" does the burden shift to the defendant to show that he or she would have taken the action anyway. *Id.* at

1006; *Consolino v. Towne*, 872 F.3d 825, 829 (7th Cir. 2017).

"A 'motivating factor' in this context 'is a factor that weighs in [on] the defendant's decision to take the action complained of—in other words, it is a consideration present to his mind that favors, that pushes him toward action." *Dace v. Smith-Vasquez*, 658 F. Supp. 2d 865, 881 (S.D. Ill. 2009) (quoting *Hasan*, 400 F.3d at 1006). Put another way, "[t]he 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020).

Either direct evidence of retaliatory animus or circumstantial evidence, such as "suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other[s]" may be enough to permit an inference that a defendant's actions were motivated by the plaintiff's protected speech. *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009). However, suspicious timing alone will be insufficient to create a triable issue of fact. *See Shanklin v. Freeman*, 799 F. App'x 392, 396 (7th Cir. 2020) (noting that "suspicion is not enough to get past a motion for summary judgment" (quoting *McGreal v. Vill. of Orland Park*, 850 F.3d 308, 314 (7th Cir. 2017)); *see also Streckenbach v. Meisner*, 768 F. App'x 565, 569–70 (7th Cir. 2019). And "mere speculation" of retaliation is not enough for a plaintiff to carry his burden at summary judgment. *Wilson v. Rundle*, 774 F. App'x 989, 991 (7th Cir. 2019). At a minimum, a plaintiff must "present sufficient evidence" that any defendant knew of the complaints which allegedly prompted the retaliation. *Wheeler v. Radtke*, 694 Fed. App'x 1023, 1025–26 (7th Cir. 2017). The problem with Plaintiffs' claims here is that they have offered no facts or evidence demonstrating Defendants were aware of their 2017 lawsuit.

### 1.    Allegations Unconnected to Any Defendant

As an initial matter, Plaintiffs fail to connect several of the allegedly retaliatory incidents

to any Defendant named in this action. Specifically, Plaintiffs allege Marcia Gevas was told by an Officer Rios on May 2, 2018, that an unidentified officer had telephoned Rios to tell her that Marcia's shirt was too transparent. *See* 2d Am. Compl. at 8. Plaintiffs also allege that unidentified officers made Marcia wait for an hour before searching her prior to a visit with David on September 16, 2018. *Id.* at 13. But Rios is not a Defendant in this lawsuit, and Plaintiffs have not identified the unnamed officers who participated in the May 2, 2018, or September 16, 2018 incidents. And Plaintiffs have not created a reasonable inference that any of the Defendants in this case was personally involved in these events. *See Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012) ("An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." (quoting *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)). Accordingly, Defendants' summary judgment motion is granted to the extent that Plaintiff's retaliation claim is based on these events.

### 2. Allegations Connected to Particular Defendants

Even where Plaintiffs have attempted to connect particular Defendants to particular events, summary judgment is warranted, because Plaintiffs have failed to introduce facts or evidence demonstrating that their protected First Amendment speech was a motivating factor for Defendants' actions. As noted above, "[i]n order to demonstrate that a defendant was motivated to retaliate based on protected speech, the plaintiff must first produce evidence that the defendant knew about the protected speech." *Consolino*, 872 F.3d at 830; *see also Wheeler*, 694 F. App'x at 1025–26.

In support of their claim that Defendants were aware of their challenges to Stateville's marriage policy, Plaintiffs contend that Defendants were informed of the 2017 lawsuit based upon the following: (1) the October 27, 2017, memorandum advising the Stateville visitor center of the

October 30, 2017, visit when Plaintiffs' marriage would take place, *see* Pls.' Mem. Opp'n Wexford MSJ at 2; Pls.' Mem. Opp'n IDOC MSJ at 2; (2) an April 24, 2018, memorandum advising the visitor center that David had a visit scheduled with "AG Edward Brenner" on April 30, 2018, *see* Pls.' Resp. Opp'n IDOC SOF ¶ 18; and (3) the prison gossip mill, *see* D. Gevas Dep. at 180:7–9. As Plaintiffs see it, all of the Defendants would have seen the October 27, 2017, and April 24, 2018, memoranda because the memos indicate they were distributed to various divisions of Stateville, including to the visiting room sergeant, visiting center, "Gates 1 & 2," and the cell houses. *See* Pls.' Exs. at 4, 250.

This information does not create a triable issue of fact as to whether Defendants were aware of Plaintiffs' First Amendment activity. First, no Defendant in this lawsuit was involved in the 2017 lawsuit. Plaintiff also do not point to anything to show that Defendants played any role in creating Stateville's marriage policy or in denying or approving Plaintiffs' marriage requests. Second, even assuming any Defendant saw the October 27, 2017 or April 24, 2018 memos, there is no reason to suppose the memos would have informed Defendants of the existence of the 2017 lawsuit. In fact, nothing in the memos indicates Plaintiffs filed the 2017 lawsuit or challenged Stateville's marriage policy in order to get married,[16] or that AG Edward Brenner was involved in the 2017 lawsuit. Third, David Gevas' conclusory testimony that Defendants knew about the circumstances of Plaintiffs' marriage because of prison gossip is insufficient to support an inference that all Defendants must have known of the 2017 lawsuit. *See Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 920, 925–26 (7th Cir. 2007) (office gossip insufficient to demonstrate causal connection between speech and allegedly retaliatory action). Consequently, this evidence does

---

[16]    In fact, the memos do not even mention Plaintiffs' marriage, although it could be inferred from the October 27, 2017, memo that the purpose of the visit was for a wedding ceremony.

not establish that Defendants were aware of Plaintiffs' First Amendment activity. *See Morris v. Kulhan*, 745 F. App'x 648, 650 (7th Cir. 2018) ("Morris can only speculate that Kulhan's reason was retaliatory, but speculation is not a basis for overcoming summary judgment."). These are the only facts or evidence Plaintiffs offer to demonstrate retaliatory motivation for Defendants Pork, Wineinger, Les, William Brown, Nicholas Brown, Best, Nicholson, or Weitekamp. Accordingly, summary judgment is warranted as to these Defendants.

### 3. IDOC Defendants Prado and Dunlap

Plaintiffs point to some additional information in an effort to demonstrate that Defendants Prado and Dunlap were motivated by the 2017 lawsuit to retaliate against them. Plaintiffs allege that Prado cut their visit short following the October 30, 2017, wedding ceremony and that Dunlap rudely told Plaintiffs that David was not allowed to wear his wedding ring in the prison. It would appear that Prado and Dunlap were at least aware that Plaintiffs had been married in a ceremony at Stateville, because they had some involvement in the October 30, 2017, visit. But apart from an awareness of Plaintiffs' marriage ceremony, nothing in the record demonstrates that Prado or Dunlap knew of the 2017 lawsuit or any other steps Plaintiffs took to get married. Thus, Plaintiffs' evidence in support of Prado and Dunlap's retaliatory motivation boils down to their account of Dunlap's demeanor, and Plaintiffs' belief that Defendants' actions on October 30, 2017, were contrary to prison policy. This is insufficient to defeat summary judgment.

Plus, Plaintiffs' own exhibits indicate that both Defendants could have reasonably believed that their actions fell within prison policy. Regarding Prado's actions, Plaintiffs insist that Stateville policy entitled them to a full two-hour visit, and they refer to the Stateville Offender Orientation Manual to support this assertion. D. Gevas Dep. at 76:6–13; Pls.' Mem. Opp'n IDOC MSJ at 5–6. The manual, however, provides only that visits shall be for "*no more than* two (2)

hours" in duration. Pls.' Exs. at 197 (emphasis added). As for Dunlap, Plaintiffs insist the October 27, 2017, memorandum both allowed Marcia to bring the ring into the prison for the ceremony and permitted David to keep it afterward. However, the permit states only that the visitors were allowed to bring the ring with them. *Id.* at 4. It says nothing about whether David Gevas could keep it, and Plaintiffs' exhibits indicate there were several reasons Stateville inmates would not be allowed to possess an item of jewelry, such as because the item exceeded $50 in value. *See id.* at 4–5. Thus, it is not at all apparent that Defendants' actions contradicted prison policy.

Moreover, even when a defendant's action violates prison policy, this in and of itself is not an indicator that the action is retaliatory. *See Armstead v. Clark*, 193 F. App'x 613, 615–16 (7th Cir. 2006); *Gillis v. Meisner*, 525 F. App'x 506, 508 (7th Cir. 2013). Rather, "the prisoner bears the burden of proving that his protected conduct was a motivating factor for the retaliation and that events would have transpired differently absent the retaliatory motive." *Armstead*, 193 F. App'x at 615–16 (internal citation omitted). Here, there is no evidence to show that Prado and Dunlap were aware that Plaintiffs had filed the 2017 lawsuit, and their complained-of actions seem equally consistent with prison policy. As a result, the Court concludes that no reasonable jury could find that Prado's and Dunlap's actions in and of themselves establish retaliatory motivation. And while Dunlap's demeanor may have been upsetting to Plaintiffs, this does not create a triable fact regarding whether he was acting in retaliation for the 2017 lawsuit. Consequently, Plaintiffs present nothing more than their own conjecture that the October 30, 2017, events were retaliatory; this is not enough at the summary judgment stage.

Plaintiffs also allege that Prado yelled at Marcia Gevas on April 23, 2018, because David Gevas had filed a grievance regarding the shortened October 30, 2017, visit. But Plaintiffs introduce no facts or evidence regarding this grievance. Consequently, they fail to demonstrate

that Prado was motivated by that grievance when he presumably yelled at Marcia.

### 4.    Wexford Defendants Okezie and Miller

Wexford Defendants Okezie and Miller deny having any knowledge of Plaintiffs' 2017 lawsuit or any other aspect of Plaintiffs' dispute with Stateville officials over their marriage. Wexford SOF ¶¶ 21, 24, 27, 31; Miller Decl. ¶¶ 4, 7, ECF No. 327-2; Okezie Decl. ¶¶ 4, 9, ECF No. 338. They further deny that the actions attributed to them in this lawsuit were motivated by a desire to retaliate against Plaintiffs. Miller Decl. ¶¶ 4, 7; Okezie Decl. ¶¶ 4, 9.

Again, Plaintiffs point to no evidence rebutting these assertions. Plaintiffs attempt to support their claim against Nurse Miller with David Gevas's deposition testimony that Miller told him that she had discontinued the medical permit because of her friendship and communications with William Brown. Pls.' Mem. Opp'n Wexford MSJ at 9. But, even if David's account of Miller's statements were admissible, at most, this testimony supports only the inference that Miller discontinued the permit because of her communications with Brown. It does not indicate she did so because of Plaintiffs' First Amendment activity.

Plaintiffs also cite to a copy of the Wexford Provider Handbook, which states that medical staff's "[c]ooperation with the correctional staff is expected and necessary," *see* Pls.' Resp. Opp'n Wexford SOF ¶¶ 19, 31; Pls.' Exs. at 398, and a description of the duties of the Director of Nursing ("DON"), which states that a "close working relationship with the DON would greatly ease the medical director's job." Pls.' Resp. Opp'n Wexford SOF ¶¶ 20, Pls.' Exs. at 399. These documents support only the generalized principle that Wexford employees are expected to work cooperatively with other correctional staff. Neither of these documents proves that Miller or Okezie were aware of Plaintiffs' protected First Amendment activity, much less that they were

somehow working in concert with correctional staff to retaliate against Plaintiffs based on that activity.

### 5.     Plaintiffs' Conjecture Does Not Entitle Them to a Trial

Finally, Plaintiffs argue that the IDOC and Wexford Defendants' retaliatory motive may be inferred from the fact that their actions occurred after Plaintiffs filed the 2017 lawsuit. But, as explained above, "neither speculation nor suspicious timing—without more—is enough to survive summary judgment." *Streckenbach*, 768 F. App'x at 569–70. Although the incidents described in the second amended complaint may have been unpleasant for Plaintiffs, they point to no facts or evidence demonstrating that the disparate events scattered over the span of a year bore any relation to their protected First Amendment activity. Accordingly, a reasonable jury would be unable to determine that Plaintiffs satisfied the causation element of their retaliation claim. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000) ("To demonstrate the requisite causal connection in a retaliation claim, plaintiffs must show that the protected activity and the adverse action are not wholly unrelated." (cleaned up)) Thus, summary judgment is warranted for the IDOC and Wexford Defendants.

### VI.     Conclusion

For the reasons stated above, the Court grants the IDOC Defendants' motion to amend their motion for summary judgment [397], grants the IDOC and Wexford Defendants' motions for summary judgment [320] [325], and dismisses this case with prejudice. Final judgment shall enter.

If Plaintiffs wish to appeal, they must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiffs appeal, they will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff

David Gevas could be assessed a "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim, the prisoner may not file suit in federal court without pre-paying the filing fee unless he is in imminent danger of serious physical injury. *Id.* If Plaintiffs seek leave to proceed *in forma pauperis* on appeal, they must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiffs need not bring a motion to reconsider this Court's ruling to preserve their appellate rights. However, if Plaintiffs wish the Court to reconsider its judgment, they may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). A Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Date:   9/7/21

_____

John Z. Lee
United States District Court Judge